## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA SUDZIARSKI                      :
2915 Whitewood Road                    :
Bethlehem, PA 18017                    :          CIVIL ACTION
                                       :
                     Plaintiff,        :          No.: _____
                                       :
          v.                           :
                                       :
AMAZON.COM, INC. *d/b/a* AMAZON.COM    :
550 Oakridge Road                      :          JURY TRIAL DEMANDED
Hazleton, PA 19202                     :
          and                          :
AMAZON.COM DEDC, LLC                   :
P.O. Box 80726                         :
Seattle, WA 98108                      :
                     Defendants.       :
                                       :

### CIVIL ACTION COMPLAINT

Sandra Sudziarski (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Amazon.com, Inc. *d/b/a* Amazon.com and Amazon.com Dedc, LLC (*hereinafter* collectively referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*), the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.     This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) an (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5.     Plaintiff is proceeding herein (in part) under Title VII and the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual with an address as set forth in the caption.

---

advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII and the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII and the ADA.

8.     Amazon.com, Inc. *d/b/a* Amazon.com is a multinational technology company that focuses on e-commerce, cloud computing, digital streaming, artificial intelligence implementation, and facilities management services, with numerous distribution facilities throughout several states in the United States (including Pennsylvania). Plaintiff worked at the distribution facility located at the address as set forth in the above caption.

9.     Amazon.com DeDc, LLC is a subsidiary of Amazon.com, Inc. focusing in distribution center services, with headquarters located at the address as set forth in the above caption. Plaintiff's W-2 forms list Amazon.com DeDc, LLC as her employer located at that address.

10.     Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

11.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## **FACTUAL BACKGROUND**

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff is an adult female.

14.     Plaintiff was hired by Defendants as a Warehouse Associate in or about 2010.

3

15.     From in or about June of 2017 until her unlawful termination (as discussed *infra*) on or about April 4, 2019, was employed by Defendants as a Safety Manager at Defendants' Hazleton, Pennsylvania facility.

16.     At all times relevant herein, Plaintiff was primarily supervised by Senior Environmental Health and Safety (EHS) Manager, Shelly Rath (*hereinafter* "Rath"); and upper level Safety Manager, Chris Zwiebel (*hereinafter* "Zwiebel").

17.     Throughout her employment with Defendants, Plaintiff was a hard-working employee who performed her job well.

18.     During approximately the last year of her employment with Defendants, Plaintiff and other female employees were subjected to disparate and discriminatory behavior based on their gender and subjected to sexual harassment and derogatory comments.

19.     For example, in or about early 2018, at a team dinner, onsite medical representative, Mike Buckman (*hereinafter* "Buckman") asked Plaintiff if she was "into S&M" (sadomasochism).

20.     Immediately following Buckman's aforesaid sexually offensive comment, Plaintiff complained to Human Resources ("HR") and Defendants' management, who told her that the incident would be handled; however, it was not meaningfully investigated or addressed. Rather, HR representatives Rich Unger (*hereinafter* "Unger") and Ashley Boyer (*hereinafter* "Boyer") both appeared to be more concerned about Buckman losing his position if Plaintiff continued to pursue claims of sexual harassment against him.

21.     Shortly thereafter, Plaintiff discovered that Buckman was also subjecting one of her direct reports, KE[2] (female) to unwanted and offensive sexual harassment and derogatory comments, including but not limited to "I saw your picture on Facebook, you shouldn't have

---

[2] This individual's initials are being used instead of her full name for privacy reasons.

worn that coat," "Was that a tight dress you had on under your coat; you were better off keeping your coat off," and "I want to see what is under that coat."

22.     Plaintiff reported Buckman's aforesaid sexually harassing treatment of KE to HR representative, Allison Blyler (*hereinafter* "Blyler"), as well as Defendants' management, but once again, Plaintiff's complaints were not meaningfully investigated or resolved.

23.     As a result of Defendants' management's and HR's failure to address Plaintiff's aforesaid complaints of sexual harassment on behalf of herself and KE (*see* Paragraphs 19 through 22), Plaintiff escalated her concerns via email to Defendants' owner, Jeff Bezos (*hereinafter* "Bezos"). Shortly thereafter, Buckman was terminated.

24.     Following Plaintiff's complaints of/objections to sexual harassment on behalf of herself and KE, Plaintiff was subjected to increased hostility and animosity by Defendants' management and Unger. By way of example, but not intended to be an exhaustive list:

> a.  Plaintiff was subjected to demeaning, condescending, and derogatory conversations and behavior;
>
> b.  Unger approached Plaintiff and hostilely informed her that Buckman had lost his job because of her complaints;
>
> c.  Defendants' management selectively enforced policies against Plaintiff (i.e., Plaintiff was advised by HR that once she clocked out, she needed to leave Defendants' premises, but others were not admonished for same);
>
> d.  Plaintiff began to be actively ignored by Defendants' management and co-workers;
>
> e.  Plaintiff was excluded from emails and meetings by Defendants' management and co-workers that she would normally be involved in;

f. Plaintiff was due for a raise in January of 2019, but HR, including Unger, would not sign off on her raise in December of 2018; and

g. Rath informed Plaintiff that "HR was out to get [her]."

25. Plaintiff complained to Defendants' management and HR on several occasions that she believed the negative treatment she was receiving was because of her complaints of sexual harassment and/or gender discrimination; however, her concerns were ignored.

26. In or about September/October of 2018, Defendants brought in a new upper level safety manager, Zwiebel, whom Plaintiff directly reported to.

27. Shortly after he began his tenure with Defendants, Zwiebel began to subject Defendants' female employees, including Plaintiff, to discrimination and disparate treatment because of their gender, including not limited to:

a. Treating Plaintiff and other female employees in a rude and condescending manner, regularly talking down to them;

b. Failing to address or give directions to female employees over the radio system, unlike their male co-workers;

c. Failing to address female employees by their first names, unlike their male co-workers; and

d. Selectively enforcing policies against Plaintiff and other female employees, unlike their male co-workers.

28. Plaintiff verbally complained of the aforesaid instances of gender discrimination on several occasions  to Defendants' management and Human Resources, including but not limited to Blyler and Site Manager, Doug Chamberlain (*hereinafter* "Chamberlain") throughout the remainder of her employment and leading up to her termination from Defendants; however, her concerns were never investigated or resolved in any meaningful manner.

29.     In addition to the aforesaid instances of gender discrimination (*see* Paragraph 27), Plaintiff believes and avers that Defendants' management denied female employees the same opportunities and promotions as their male co-workers.

30.     For example, on or about January 8, 2019, Plaintiff attended a yearly conference in Dallas, Texas with Zwiebel and other members of Defendants' management, wherein they ranked employees for promotion.  Plaintiff ranked one of her direct reports, "BH"[3] (female) as top tier, but Zwiebel disagreed, stating that BH abused the intermittent medical leave that she utilized under the Family and Medical Leave Act ("FMLA") for her serious health conditions.

31.     In response to Zwiebel's aforesaid FMLA violations regarding BH's promotion, Plaintiff informed Zwiebel and other members of Defendants' management that she believed it was illegal to use someone's FMLA rights against them with regard to a promotion; however, Plaintiff was largely ignored, and BH was not given a promotion.

32.     Plaintiff also reported Defendants' management's aforementioned FMLA violations regarding BH's promotion to Blyler (a protected activity under the FMLA).[4]

33.     Shortly after reporting Defendants' management's illegal and discriminatory use of BH's FMLA leave against her in denying her a promotion, Plaintiff was asked to meet with HR and Defendants' management, at which time she was given a Memorandum of Expectation ("MOE") and informed that she needed to engage in better communications with her team.

---

[3] This individual's initials are being used instead of her full name for privacy reasons.

[4] Employees are protected from retaliation for opposing or complaining of any unlawful practice under the FMLA, including an employer using "FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *See* 29 C.F.R. § 825.220(a)(2), (c) and (e); *see also* 29 U.S.C. § 2615(a)(2) (prohibiting employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful [by FMLA]"); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) ("Employers 'cannot use the taking of FMLA leave as a negative factor in employment actions.'" (citing 29 C.F.R. § 825.220(c))); *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 67 (D.D.C. 2011) ("Individuals . . . are protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful under the [FMLA]." (citing 29 C.F.R. § 825.220(c))); *Wood v. Handy & Harman Co.*, 2006 U.S. Dist. LEXIS 81186, at (N.D. Ok. Nov. 6, 2006) (holding employee could demonstrate he engaged in protected opposition activity if he reasonably believed treatment of co-worker violated his FMLA rights).

Plaintiff was also disciplined for informing BH of the FMLA leave violations regarding her promotion.

34.    On or about February 18, 2019, Plaintiff sent an email to Blyler, informing her that she believed that she had been given the MOE for retaliatory reasons – specifically for (1) her complaints of sexual harassment and/or gender discrimination on her own behalf and her co-worker; and (2) for opposing and complaining of Defendants' illegal practices in using FMLA leave against her co-worker.

35.    Despite asking Blyler to have her aforesaid complaints of sexual harassment, gender discrimination, retaliation, and FMLA violations addressed and investigated, Blyler failed to take prompt remedial action and instead dismissed Plaintiff's complaints.  In fact, rather than investigating Plaintiff's aforesaid concerns, she was subjected to further animosity and hostility.

36.    As a result of the increased animosity and hostility that Plaintiff was subjected to following her complaints of sexual harassment, gender discrimination, FMLA violations, and retaliation (discussed *supra*), Plaintiff requested on several occasions to be moved to a different site location, to which Defendants' management agreed but then proceeded to continuously postpone Plaintiff's transfer date.  Plaintiff was finally informed that she should appear for work at a new site location on or about March 4, 2019.

37.    In addition to being subjected to gender discrimination, a hostile work environment, and retaliation (for her complaints of gender discrimination, sexual harassment, FMLA violations and retaliation), Plaintiff was also discriminated against because of her actual and/or record of health conditions.

38.    At all relevant times during her employment with Defendants, Plaintiff had and continues to suffer from several disabilities, including anxiety and depression (and associated complications).

39.     As a result of her aforesaid health conditions, Plaintiff experiences panic, fearfulness, sleeplessness, and feelings of hopelessness, which (at times) limits her ability to perform some daily life activities, including but not limited to sleeping, engaging in social interactions, focusing, and working (among other daily life activities).

40.     Despite her aforesaid health conditions and limitations, Plaintiff was able to perform the duties of her job well with Defendants; however, Plaintiff did require some reasonable accommodations while employed with Defendants, including a brief medical leave of absence (as discussed *infra*).

41.     Toward the end of her employment with Defendants, Plaintiff advised Defendants' management and HR on multiple occasions that the discriminatory and retaliatory hostile work environment she had been subjected to (discussed *supra*) was exacerbating her health conditions. For example, but not intended to be an exhaustive list:

    a.  On or about January 16, 2019, Plaintiff emailed Blyler that she had been diagnosed with depression and "between the sexual inappropriateness last year and the whole dealing and repercussions of that, to [Rath] telling her that "HR was out to get [her]" . . . [i]t has all been overwhelming"; and

    b.  On or about March 4, 2019, when Plaintiff arrived at the new site location she had purportedly been transferred to, she was hostilely informed that none of Defendants' management was ready for her, and she was asked to leave the premises. The following day, she contacted Defendants' employee hotline and informed them that the hostile work environment she had been subjected to by Defendants' management had exacerbated her health conditions and she required a brief medical leave of absence to care for and treat her disabilities (a reasonable accommodation under the ADA).

42.     Plaintiff commenced a medical leave of absence on or about March 5, 2019 and was released to return to work on or about April 4, 2019.

43.     During her approximate four weeks of medical leave, Plaintiff provided Defendants with medical documents, including completed FMLA paperwork, regarding the status of her aforesaid medical conditions and confirming her need for medical leave.

44.     On or about April 4, 2019, Plaintiff returned from her medical leave and was abruptly terminated mid-afternoon by Defendants' management and HR for allegedly violating her MOE by "gossiping" – more specifically, for allegedly telling another employee that Zwiebel was sexist and racist, which is completely pretextual.

45.     Upon Plaintiff's information and belief, Defendants had already made the decision to terminate Plaintiff while she was out on medical leave.  Defendants thereafter followed through with Plaintiff's termination upon her return from medical leave, claiming just hours after her return that she had allegedly "gossiped" about Zwiebel to another co-worker.

46.     At the time of Plaintiff's termination, she was verbally offered unsolicited severance pay if she agreed to waive all legal claims against Defendants – which she refused to agree to.[5]

---

[5] While Plaintiff was never provided with a written severance agreement following her termination, the mere offer of severance on the condition that the employee waiver her legal claims is sufficient, among other facts, to a finding of pretext. *See e.g.*, *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. May 22, 2013) (employer's decision to offer Plaintiff severance on the condition he waive any FMLA claims, even though not a company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

47.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, pretexual discipline, issued an MOE, and ultimately terminated by Defendants for (1) her complaints on behalf of herself and a co-worker of sexual harassment and retaliation (in response to her complaints of sexual harassment); (2) her gender; (3) her complaints of gender discrimination and retaliation (in response to her complaints of gender discrimination and retaliation); (4) her known and/or perceived disabilities; (5) her record of impairment; (6) her requested accommodations; and (7) her objections to and/or complaints on behalf of her co-worker regarding Defendants' FMLA violations and retaliation (in response to her complaints regarding Defendants' FMLA violations).

## COUNT I
## Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Hostile Work Environment and [2] Retaliation)
### -Against Both Defendants-

48.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49.     During her tenure with Defendants, Plaintiff made complaints of and/or objections to sexual harassment by onsite medical representative, Buckman, to Defendants' management and HR, on behalf of herself and her co-worker.

50.     Instead of meaningfully investigating Plaintiff's aforesaid complaints of sexual harassment on behalf of herself and her co-worker, Defendants' management and HR largely ignored them and instead subjected Plaintiff to increased hostility and animosity (as discussed *supra*).

51.     As a result, Plaintiff complained to Defendants' management and HR that she believed the increased negative treatment she was receiving was in retaliation for her prior complaints of and/or objections to sexual harassment on behalf of herself and her co-worker.

52.     Despite Plaintiff's repeated complaints of sexual harassment and retaliation (discussed *supra*) to Defendants' management and HR, Defendants' management and HR continued to harass Plaintiff through disparate treatment, pretextual discipline, and by issuing her an MOE.

53.     On or about April 4, 2019, in close proximity to Plaintiff's most recent complaints of sexual harassment and retaliation, Plaintiff was abruptly terminated for pretextual reasons.

54.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, pretextual discipline, issued an MOE, and ultimately terminated because of her complaints of and/or objections to sexual harassment and retaliation (in response to her complaints of sexual harassment).

55.     These actions as aforesaid constitute unlawful violations under Title VII.

### COUNT II
### Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation)
### -Against Both Defendants-

56.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.     During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment, demeaning and/or derogatory treatment, pretextual discipline, and issued an MOE by Defendants' management because of her gender and/or her complaints of gender discrimination and retaliation.

58.     Instead of investigating Plaintiff's aforesaid objections to/complaints of gender discrimination and retaliation, Defendants' management and HR largely ignored them and left her legitimate concerns unresolved.

59.     On or about April 4, 2019, in close proximity to Plaintiff's most recent complaints of gender discrimination and retaliation (in response to her complaints of gender discrimination), Plaintiff was abruptly terminated for pretextual reasons.

60.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, pretextual discipline, issued an MOE, and ultimately terminated because of her (1) gender; (2) complaints of/objections to gender discrimination; and/or (3) complaints of retaliation (in response to her expressed concerns of gender discrimination).

61.     These actions as aforesaid constitute unlawful violations under Title VII.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination and [2] Retaliation)**
**-Against Both Defendants-**

62.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.     Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to sleeping, focusing, engaging in social interactions, and working (among other daily life activities).

64.     Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

65.     Plaintiff requested reasonable accommodations from Defendants, including but not limited to a brief medical leave of absence.

66.     Plaintiff was terminated from Defendants shortly after requesting and/or utilizing reasonable accommodations (i.e., medical leave of absence) and **mere hours** after returning from her medical leave of absence for completely pretextual reasons.

13

67.     Plaintiff believes and therefore avers that she was terminated from her employment with Defendants due to (1) her known and/or perceived disabilities; (2) her record of impairment; and/or (3) her requested accommodations (which constitutes illegal retaliation).

68.     These actions as aforesaid constitute violations of the ADA.

## COUNT IV
## Violations of the Family and Medical Leave Act ("FMLA")
### ([1] Retaliation & [2] Interference)
### -Against Both Defendants-

69.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

71.     Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

72.     Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

73.     Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

74.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

75.     Plaintiff was terminated the day she returned from an FMLA-qualifying leave of absence.

76.     Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-

qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; and/or (5) making the decision to terminate Plaintiff while she was still on an FMLA-qualifying leave and then following through with said termination almost immediately after Plaintiff returned to work.

77.     These actions as aforesaid constitute violations of the FMLA.

### COUNT V
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation)
### -Against Both Defendants-

78.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79.     In or about January of 2019, Plaintiff objected to Defendants' management's use of a co-worker's FMLA leave as a negative factor in considering and ultimately denying the co-worker a promotion.

80.     Plaintiff also complained of Defendants' management's aforesaid FMLA violations regarding her co-worker's promotion to HR (a protected activity under the FMLA).

81.     Following Plaintiff's reports of FMLA leave violations on behalf of her co-worker, Plaintiff was subjected to increased hostility and animosity (as *discussed* supra).

82.     As a result, Plaintiff complained to Defendants' management and HR that she believed the increased negative treatment she was receiving was in retaliation for her prior complaints of Defendants' FMLA violations on behalf of her co-worker.

83.     Despite Plaintiff's repeated complaints of Defendants' FMLA violations and retaliation (in response to her complaints of Defendants' FMLA violations), Defendants'

management continued to harass Plaintiff through disparate treatment, pretextual discipline, and by issuing her an MOE.

84.     On or about April 4, 2019, in close proximity to when Plaintiff engaged in protected activity under the FMLA, Plaintiff was abruptly terminated for pretextual reasons.

85.     Plaintiff believes and therefore avers that she was terminated from her employment with Defendant for having objected to and/or complained of Defendants' FMLA leave violations on behalf of her co-worker and retaliation (in response to her complaints of Defendants' aforesaid FMLA violations).

86.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE,** Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  July 30, 2019

17